Good morning, Your Honors. My name is Scott Hubbard. I represent the plaintiff, Michael Rocca, in this matter. Before I begin, I wanted to touch on some housekeeping, specifically a Ninth Circuit opinion came down after the briefing. This issue that I wish to bring to the Court's attention. Did you file a 28-J letter? I have not. I can do that. That's the proper way to do it. It is the proper way. The other proper way to do it is to provide a citation before you argue. We have neither. Fair enough. Fair enough. So, based on that case of Kohler v. Presidio, which I will provide a 28-J letter with. The clerk will give you a piece of paper afterwards. Fair enough. It provides that it would support the District Court's holding on the hand towels. So, equivalent facilitation in that respect applies. So, we're withdrawing that claim. And it extended the Strong v. Valdez holding to trial testimony as well. So, I just wish to bring both of those to your attention. Now, today I plan on... What is the Strong v. Valdez holding that you're talking about? That was regarding the District Judge excluded certain testimony from my client on the basis that it was conclusory. Strong v. Valdez came down Judge Kaczynski's opinion, which said that disabled plaintiffs can offer lay witness testimony on ADA violations and it's not conclusory. Oh, I see. Okay. So, that would extend to the waste receptacle and, I believe, the piping. So, this case had two parts to it. A summary judgment ruling. The case actually had three parts to it, Your Honor. The summary judgment motion, the ruling that were quasi not appealing, the trial order, and the attorney fee order. Right. Okay. Well, let's... I was primarily concerned about the substantive part of it, the merits part, which is the summary judgment ruling and then went to trial on three... It did. About a half a dozen issues. It did. The barriers that weren't addressed in the summary judgment motion were resolved, carried over to trial. We went to trial on those. They consisted of, in essence... The judge granted relief on one. On one. And said on the others, there's no standing. Correct. And that was going to be my first argument because it's so much fun. All right. So, where did the judge err on the standing issue? Standing issue err... Let's begin with actual injury. I'm thinking of the rat pipe because that's the sexiest. The judge held that our client didn't have standing to... Well, I understood that to be simply determination that it was wrapped. No. Well, that's what he said. He said he looked at it and he said it looked wrapped to him. My reading of the order, and I'll... Let's... Let me deal with the court's... What if we agree with you that somebody doesn't have to get burned before they sue? What if we agree with that, just to save you a minute? The photos, the exhibits, they're wrapped. They aren't. And while I'm pulling them up, I can describe them to you. If you notice above, you'll notice two small little pipes, or actually one pipe that is not wrapped. It's silver. That's the hot water pipe. Not... The one right against the wall. I... Counsel, you'd have to be a contortionist. Actually, you don't. You just have to be in a wheelchair and put your knees and legs under the sink, Your Honor. Well, but I think that's true as to the big white wrapping, right? But this other silver pipe, it's much higher and all the way... Almost. Just... It only sticks a few inches out of the wall. You'd have to stick your... You'd have... Your legs would have to extend almost all the way into the sink to the wall. It doesn't, Your Honor. I... My mother... Do we have measurements that show it? Is this any of that? Was there testimony or evidence to describe this? We had the client's testimony about the potential for burning his legs, which would be admissible under the Ninth Circuit... Under the strong opinion, Your Honor. Well, I looked at that testimony, Counsel, and is there a page of the transcript you think I might have missed? Probably not. Well, also it would be admissible, but the judge doesn't have to believe it, right? In other words, he could look at the picture, he could look at the testimony, he could say, there's nothing here that could hurt anybody. If this was... I would say yes and no. The yes part, the court... Trial courts are always free to come up, make findings of fact at trial. I would say no, because in arriving at this finding of fact, he disregarded the photos, which... This is a big deal. It does burn. My mother was in a wheelchair, Your Honor. You say it's crammed up there, how can they not touch it? Wheelchair users, this is a big problem for them. I don't doubt any of that. I'm just trying to... Absolutely. So I don't want to waste your time on that. Fair enough. I'm very sympathetic to that, and I think we all are, but we're looking for the evidence in the record. Fair enough. So evidence in the record, my client's testimony regarding that he would have burned his legs, and the photograph showing the pipe that's unwrapped, and all the pipe has to be is unwrapped. The pipe moves. It does move. It's a free-flowing pipe. It's made out of that... God, I don't even remember the material. The silver thing moves, not the white thing? Yes, the silver thing moves. What silver thing are you talking about? The thin one? Yes. Yes, that is the hot one. We have two photos, counsel, and one of them doesn't show what we're calling the silver thing, and one does. Were they both admitted? Yes, Your Honor. As a matter of fact, one of my greatest regrets is that we didn't include more photos on this. Well, the record's a little tough. So one of these photos shows a garbage can between the two sinks, and one does not. Yes. Or sort of barely does. It's taken from the other direction. Maybe a better way to say it. One of them shows the door. You can't see the silver pipe. One of them doesn't show the door, and you're telling me now that if I go back and look, they were both admitted. I would, yes. I would say ER 100, just to be precise. It's on the bottom right here. That's one number. I've got two photos. Yes, ER 100, and the next photo is ER 101, and you can see it on ER 101 too. It is admittedly, if you're operating off of a black and white photo instead of the PDF. I've got a color photo. I just don't see it. Permission to approach, Your Honor? That's okay. Why don't you hand this to the clerk, and you can mark on Judge Kristen's what you're trying to show us. That'll work. The second point I wish to discuss. Hold on. The clerk's going to give it to you right now. Let's just deal with this. My apologies. I didn't mean to rush, Your Honor. All right. This is unusual, Your Honor, because the ER that I downloaded from the court's website doesn't show these two, the second picture. It just shows the first one. But I can circle it for the court too. Can you put a star on the one that is in the record? Yes. They're both in the record, Your Honor. It's just that the one that I'm referring to is ER 100. What's the unusual part? What's missing? It was not put in the excerpts of record, and so I don't know where the second one is. So you think it's in the record but not in the excerpt? It is in the record, but I don't know. Okay. All right. I don't want to take a whole lot of time on this, but all right. Okay. So this is the one. This particular pipe, the judge said he actually encountered it. Yes. I mean, he just, on the facts, on the evidence, he just found no violation. He found no standing, Your Honor, because he- With this? He found no violation. He, if memory serves, and forgive me, I might- So I thought that he found no- It's kind of odd the way he did the standing issue. He did, Your Honor. But he dressed standing with respect to the parking area. Correct? Yes. And he said with respect to parking, there was no standing, so he just threw those out. Correct. He said he didn't really encounter any injury, any harm. Right? He didn't do the rest of the analysis. And with the pipe, he said, well, yeah, there is injury, but I just don't believe that there's a violation. He actually- Just to back up a bit on that first one, he did go through the analysis. He did say this is what plaintiff claims, this is what the evidence shows, this is what the law is. However, plaintiff left standing. And so that's the approach he took, which was, as you said, was kind of curious in that regard. What was wrong with his standing? Nothing, in my humble opinion. Did the judge think he didn't demonstrate or testify to an intent to return? Isn't that it? That is part of it. I believe with respect to his trial testimony, he couldn't believe that any Southern California native would want to avoid the LAX, the five at LAX during- It's a little odd to go all the way to Downey or Linwood, wherever it was. Where was it, Lakewood, Downey? I think Linwood, Lakewood to Linwood or something along those lines. It is a bit out of the way. If you look at the record, and the district judge miscited the record in this respect too, it was page 69 of the trial transcript. You see that my client said that he didn't want to go that way because LAX 405 gets congested that time of day. And so that's why he went the five. And the judge says, well, that's 20 extra miles. Yeah, but you also don't have to deal with LAX congestion. You just have to deal with the five. With freeway five. I get the two confused. I'm from Northern California, Your Honor. Your Honor, I have five minutes left. I really would like to save some time for rebuttal. Is there any other questions that I could answer briefly before I- Let me just- I just want to get the lay of the land. With regard to- the district judge did find some violations. He did, yes. So under our on-bank case, as I understand it, if there were some violations, he could raise other ones as long as- All that related to his disability. Correct. Yes. As long as he could establish that he would either be coming back or would be deterred from coming back. I think that was the issue of standing. Correct, that's what I'm saying. Yes, threat of future harm. Yes. As to the other violations. No, that is just to the- Chapman, if you recall, we were both there, Your Honor, that based its decision, its analysis on Dorn versus 7-11, which is also one of my cases. And in Dorn versus 7-11, Judge Gould wrote that a disabled plaintiff only had to be in the city within the next year in order to- Well, that's not how I understood Chapman. Didn't say that. Well, Chapman didn't touch on that particular issue, but it did rely heavily on the analysis of Dorn versus 7-11. And Dorn versus 7-11 is still good law in that respect, Your Honor. Okay, thanks. May I ask one? Yes, go ahead. Counsel, on paragraph 10, I'm just going to give you a chance if you have a comment. On paragraph 10, the court found that there was a lack of standing, no intent to return. Pretty clear. We talked about the freeway. Yes. But it's very clear. It says he doesn't have standing to assert the following violations, and he identifies three, and they're all about the parking lot. It is. Paragraph 11 is then about the remaining barriers. And I'm just circling back to Judge Pryor's, I think, implied question. If he didn't have standing for paragraph 10 for the parking lot, why does he have standing for any of them? Well, that's an excellent point, too, Your Honor. I don't think you're here to try to talk yourself out of your win, though. And so what's your – I mean, this is a credibility determination. Are you saying that he didn't have – that we should find it clearly erroneous when the judge decides that he's listened to this witness and doesn't believe there's an intent to return? This is going to go up. Because that would take care of the whole case. All right. Here is the – here is going to be the long answer. And the long answer is let's assume arguendo. Judge Wright's opinion was based entirely on the belief that Rocha went to this particular Denny's to find violations of the ADA. Basically, he was going to serve as an attorney general or a tester. Even if that's the case, Congress drafted the ADA, mirrored it based on the FHA and the Civil Rights Act of 1964, to make this entirely acceptable behavior. Counsel, you don't have to convince me of that. I'm looking at the order. I'm asking you a different question. I'm not saying there's something wrong with being a tester. No. My question is, as to paragraph 10, what the judge found is he lacked standing because the judge didn't believe that he had an intent to return. Okay? And the judge found lack of standing as to the parking lot. And you have to go into the judge's attorney fee order to see what that was – what the basis of that was. You haven't got my question yet. Maybe you don't want to answer it. I'm trying too hard, Your Honor. That's all right. One more time, please. If he doesn't have standing for the parking lot violations, how would he have standing for any of the other violations? I would say that if you read sections A, B, and C of paragraph 10, he talks about how because no one parked in the access aisle next to him and because he did not have a van that he drove to the station, he lacked standing to complain about those particular barriers. I believe that is the answer I can give that doesn't sink my entire case. But that answer wouldn't be correct if – under Chapman, as I understand it – if you could establish an intent to return or a deterrence from returning. Yes. Because you did find some other violations. Yes. But he said – but he found other – and your one-year thing doesn't make any sense to me. I was just looking at – I mean, what is quoted in Chapman about Duran is that in Duran, the plaintiff alleged that he visited the 7-Eleven store on 10 to 20 prior occasions, that he's currently deterred from visiting because of his accessibility, that the store is conveniently located near his favorite fast food restaurant in Anaheim, and that he planned to visit Anaheim at least once a year on his annual trips to Disneyland. I mean, that's a completely different set of facts than what we have here. It is a different set of facts. And then one year only comes up because he says he was planning to go back once a year, but your guy didn't even say that. My guy said that he went down that way and stopped. And it goes to the old – my guy said that he would return, that he does drive that route, and he does stop at Denny's and gets meals. That would be sufficient. He didn't say he'd ever been there before. He has never been there before. He didn't say he was going back. Except for the one time before filing the lawsuit. Where in the record did he say that he would go back? What document is that? The Royal Declaration? Is that where to look at? Your Honor, I am – Here, I've got it. I found it. Okay. So if there's no further questions, Your Honor. All right. You can have the seat. Thank you. Good morning, Your Honors. If it may please the Court, Zane Obagi appearing for appellees, Den 109LP, Fritz Mahler, and Gisela Mahler. Your Honors, the standard of review here is review for clear error. And appellants have admitted as much in their brief. It is clear here that Judge Wright followed the strong court in his findings of fact and conclusions of law. At paragraph 11, he states that although ROCA did not provide any measurements of the door latch, he still found that the door latch violated the California Building Code and constituted a violation of the ADA because the evidence demonstrated the same. With regard to the space in the – the clear space that's required in the bathroom, the judge said there that there – it was not clear to him that 60 inches – that there wasn't 60 inches of clear space one way or 54 inches the other way. So I'm still interested in the question that Judge Christin was pursuing. Sure. If there's no standing, why does this – why doesn't that just end the case? Your Honor, so standing goes back, of course, to Article III, that a person needs to have an injury in fact to come before the federal court. Where the plaintiff is actually injured, we're not concerned about whether he or she is ever going to return to the establishment because he or she has encountered the barrier and has actually become injured in that way. So you're not contesting standing? Relative to the court's findings as to those. . . On the parking lot, you're – we're looking at the other three claims. So there are three areas where the court found injury and violations. Pipe is improperly wrapped. Paper – towel dispenser is too high. And space needed to get to the water. . . The turning radius. And as to those three, you're not contesting standing. Is that right? No. The plaintiff does lack standing relative to – yes. As to those three where the court found that there were violations, we're not contesting standing because. . . And also as to the pipes, contrary to what we were told before, he specifically said not that there was no standing but that there was no violation. Right. So as to that, there was standing. Right. Now, with regard to the parking sign, it says no – it says – it didn't say no parking in the access aisle, but the plaintiff did not encounter any barrier. There was nothing in his way. There was nothing parked there. That's what I wonder about because, I mean, the purpose of having a no parking sign is so you can go – you can both get out but also know when you're inside that you're going to be able to get in. Right? Right. And so it's basically a projection of being able – parking with the space being next to you not accessible and the fact that it wasn't actually accessed during the time that he was there, I'm not sure that doesn't mean he didn't encounter the barrier. The barrier is the lack of assurance that you're going to be able to get into your car. Well, sure. In that case, that's why the Ninth Circuit's developed the jurisprudence that if they did not actually encounter a barrier at the time, then we go back to this. But I'm saying he did encounter the barrier, the barrier being that he was entitled to an assurance while he was in the store that he would be able to get back in when he got back and he didn't have that because there was no no parking sign. So he would be deterred. Well, Your Honor, when he came back out, he was assured that the space was clear because the space was clear. But he might have been deterred to come back, but he surely didn't testify to that down below. That's not in the record. And nor did he state that he intended to come back. The only time he ever came back was just to see. Well, he said he intended, but he didn't give any specifics at all. Right. And, you know, with regard to the credibility of the witness here, Judge Wright said that he did not find him credible, and he did not believe his testimony regarding the clear space in the bathroom. Let me ask you something. I mean, in some ways this all relates largely to the attorney's fee because if there was one or two more, I mean, suppose that we were to hold that there was, in fact, a violation when he was there with regard to parking, the only consequences that I think, and you can tell me if I'm wrong, is that when there would be an order to fix the parking and then when you were tallying up the fees, there would be one more positive result. So if I understand the Court correctly, the question is about the attorney's fees. Well, it's really the connection between — It does seem to me that there's a problem with the attorney's fees order because the fact is he did prevail on some of the barriers. Well, at summary judgment. At summary judgment. Well, and here. And one here. And one here. So he's the prevailing party. The Court expressed some skepticism about whether he was the prevailing party. So just to take it from the top, you're not contesting he's a prevailing party, are you? Yes, we are, Your Honor. I mean, he was nominally the prevailing party. In the final order, the Court finds three violations and finds no standing relative to three other authorities. So he still prevailed as to what he prevailed. Your Honor, there were also numerous allegations that were brought and then pulled back by the client. What's your authority for the position that he's not the prevailing party? He partially prevailed. He partially prevailed and so did the defendants for that matter. So what's your authority that he's not the prevailing party and he's entitled to zero fees? Well, if I understand the prevailing party rule, Your Honor, it's that a person has prevailed on a majority of their claims. I'm asking for your authority. Where did you get that from? What case supports that notion? I don't have that citation. That's where there isn't one. But there would be. There's not such a case as that. The way you count, you look at the degree of relief obtained when you – he was the prevailing party here. As to, as I understand it, when you're deciding how much in fees. But in terms of eligibility for fees, he's the prevailing party. Right. Right? Okay. So the judge was wrong. The judge is not wrong, Your Honor, because the judge has the discretion to not award attorney's fees where it would be unjust. And here, Judge Wright said that it would be – found that it would be unjust to award attorney's fees on balance with all the factors that a judge – Doesn't the state statute provide for mandatory fees? Absolutely, Your Honor. And so why doesn't he get fees under the state statute? Well, under the Supremacy Clause of the United States Constitution, federal laws – I understand there's that Huppert case, but it was a completely different situation. I mean, that dealt with a situation in which the federal statute would not permit the award of fees to the defendant under those circumstances. It was defendant's fees we were talking about. Your Honor, which – Here you have a situation in which he was a prevailing party, and the question is, is it mandatory or discretionary that he get the fees? Under state law, of course, it's mandatory. Under federal law, there's some degree of discretion. And federal law has occupied and ensured that all Americans get free and equal access to public accommodations and has regulated this fear. The states have been allowed to also regulate this fear, but they cannot regulate this fear in a manner that contradicts or overrules federal law. So here, the state – Thank you for the lecture. The point is, however, that how does it contradict federal law to say that the fees – when he is a prevailing party and he is entitled to fees, he is eligible for fees under the federal statute, unlike in the Huppert case where the federal statute would not allow the award of fees under those circumstances. It would be allowed to give the fees here, right? Under federal law, yes. He would – Judge Wright was allowed to give fees. He was also allowed to not give fees if he found it unjust. And he made – he found specific – he found specific – he made specific findings why it would be unjust to award fees here. And then to require him, nonetheless, to both distinguish the fees incurred for state claims versus for federal claims, which is an impossible task. Well, it's not impossible. And we said it is an abusive discretion not to do so. We have case law right on point, counsel. Excuse me, Your Honor? We have case law right on point. If it says otherwise, what case law are you relying upon? Well, I don't know that – Well, I'm looking at it. I didn't see that plaintiff's attorneys distinguished the incursion of their fees as between the two, that there is – Well, plaintiffs didn't allocate. And I actually wondered whether the district court was within his discretion to deny completely, because there wasn't an allocation of fees. And so I looked into that. But we said it's an abusive discretion to – for the judge to zero him out on that basis. He would have to do some kind of an eyeballing to admittedly, in this case, probably very drastically reduce, but certainly reduce. So I don't want to belabor the point, but do you have authority for your position? If you've got it, I want to look at it. Besides preemption, Your Honor, no. Okay. What relief were they seeking at the time of trial? Was damages in play or was it just injunctive relief?  But I was obviously not the trial judge, so I'm not – Jim, the district court's reason for finding it unjust, the fees, was that the theory was further supported during the bench trial, as the court found that the only purpose for Roqua to visit the defendant's restaurant was for finding violations. But that's okay. So his reason for finding it unjust was an invalid reason. Well, he also found that as we – But he had an – he had an invalid reason. Yes, that is absolutely okay for persons with disabilities to go to places of public accommodations to discover a trial suit. But the judge didn't think so. He called it a disingenuous practice and an attempt to extract fees from unjustified efforts, which would disrupt the equity already achieved through the accessibility changes defendants have and are required to perform. So to reward the fees would be unjust. Your Honor, that was not his only finding. What's his other finding? Because I think we all agree that that's not going to work. Right. His other findings were that this is a professional – a law firm that specializes or supposedly specializes in this area of the law. They incurred over $30,000. Fine. So you cut the fees. So you cut the fees. You don't give them $30,000. But that doesn't explain giving them zero. Did he have any other reason? He also said that he didn't approve of the counsel's conduct during trial and did not want to support their conduct, whatever it was, by awarding fees. All right. Okay. Thank you, counsel. You have a minute for rebuttal. I want to apologize fast. I double-checked the record after you said something. Judge Berg is on your right. Well, I can read. Yes. I read injured as injured in fact, and that one's on me. So I do apologize for that one. And if the court doesn't have any other questions for me, I'll submit. Okay. Thank you. Submitted. The matter is submitted. Thank you, counsel.
judges: Paez, Berzon, Christen